# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7973 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Schmidt vs. Ottawa Medical Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment. Judgment is therefore entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. All schedules set in this case including pretrial conference set for 12/7/01 and trial set for 1/7/02 are vacated. The case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 8/6/01 date docketed | |
| | Notified counsel by telephone. | | | 14 |
| | Docketing to mail notices. | | EB docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -3 PM 5:58 | 8/3/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DR. RICHARD A. SCHMIDT, M.D.,**          )
                                           )
      Plaintiff,                         )
                                           )
v.                                         )
                                           )   No. 00 C 7973
**OTTAWA MEDICAL CENTER, P.C.,**           )
a corporation,                             )
                                           )
      Defendant.                         )

### MEMORANDUM OPINION AND ORDER

Dr. Richard A. Schmidt, M.D., alleges that Ottawa Medical Center ("OMC") violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, because he was compensated less than younger and less experienced physicians, he was expected to adhere to an on-call schedule that was difficult for him to meet because of his age, and OMC refused to fully fund profit sharing and retirement programs that benefitted him. OMC moves for summary judgment, claiming that Dr. Schmidt, as a shareholder of a professional corporation, is not an employee entitled to protection under the ADEA. I grant the motion.

I.

Dr. Schmidt has maintained a family practice with OMC since 1966. From 1966 to 1967, he was merely an employee of OMC. He became an partner in 1967, and has been a shareholder since 1969, the year of incorporation. OMC currently employs a total of 77 people, including eight physicians who are shareholders, three

14

physicians who are not shareholders, one nurse practitioner who is not a shareholder, and 65 other employees, none of whom is a shareholder.

Throughout the years, Dr. Schmidt has served as an officer of OMC. He served as Vice President from 1988 to 1991, and as Secretary from 1994 to 1997. On March 13, 2000, OMC amended its bylaws and made all shareholders directors of the corporation, so Dr. Schmidt is currently a director.

On December 1, 1976, Dr. Schmidt entered into an employment agreement with OMC. It states that Dr. Schmidt is:

> employed as a physician and surgeon by the Corporation, and shall devote all of his professional time, knowledge, and skill to his employment and shall perform such duties and occupy such positions and offices as the Board of Directors of the Corporation may from time to time determine, including . . . the treatment and diagnosis of those patients assigned to him by the Corporation.

For compensation, the employment agreement states that Dr. Schmidt shall receive a basic salary of $3700 per month, and in addition, "shall be eligible to receive additional compensation in forms and amounts as the Corporation deems appropriate." The corporation retains "all proceeds received by the Employee for professional services, from whatever source derived." Dr. Schmidt is currently being paid solely his base salary of $3700 per month, or $44,400 per year.

All physician shareholders of OMC are compensated pursuant to the Shareholder Compensation Plan ("the Plan"). All eight

shareholders have the opportunity to participate in the revision process and vote on the Plan. The new plan was adopted by a vote of a majority of the shareholders. The Plan, which was adopted on December 13, 1999, calculates the shareholder's salary by taking the professional fees generated by a physician, and deducting the corporation's overhead, as well as certain benefits. OMC claims that Dr. Schmidt's generation of professional fees does not qualify him for any additional compensation under the Plan, other than his base salary. Dr. Schmidt does not dispute this, so I must accept it as true.

II.

Summary judgment should only be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding the motion for summary judgment, I must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in the party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The only issue in this case is whether Dr. Schmidt's status as a shareholder in a professional corporation prohibits him from claiming status as an "employee" within the meaning of the ADEA. OMC argues that because Dr. Schmidt is a shareholder, he is not protected under the ADEA. The definitions in the ADEA are unhelpful, defining "employee" as "an individual employed by an

3

employer," 29 U.S.C. § 630(f), and "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees . . . ," 29 U.S.C. § 630(b). The Seventh Circuit has held that true partners in an accounting firm cannot be regarded as employees under 42 U.S.C. § 2000(e)(f), because of their unique status as business owners and managers, and their share in the losses and profits. *Burke v. Friedman*, 556 F.2d 867, 869 (7th Cir. 1977) (Title VII). The Seventh Circuit extended this reasoning in *E.E.O.C. v. Dowd & Dowd*, 736 F.2d 1177 (7th Cir. 1984), in which it held that shareholders in a professional corporation engaged in the practice of law are not "employees" for purposes of determining whether the corporation was an "employer" under Title VII. *Id.* at 1178. The court applied an "economic reality" test of the employment relationship, and viewed the role of "a shareholder in a professional corporation to be far more analogous to a partner in a partnership than it is to the shareholder of a general corporation." *Id.* at 1177-78. The court reasoned that "[t]he economic reality of the professional corporation in Illinois is that the management, control, and ownership of the corporation is much like the management, control, and ownership of a partnership," so there is "no reason to treat the shareholders of a professional corporation differently for purposes of Title VII actions than we did partners of the accounting firm in *Burke*." *Id.* at 1177.

4

Dr. Schmidt argues that I should not rely on *Dowd & Dowd*, and refers to *Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793 (2d Cir. 1986), in which the Second Circuit rejected *Dowd & Dowd*, and held that shareholders of a professional corporation were employees of the corporation for purposes of the ADEA. *Id.* at 798. Unfortunately for Dr. Schmidt, "[t]his court simply is not free to choose sides in the debate between the Seventh and Second Circuits on this issue." *Smith v. Deitsch and Royer MD, Inc.*, No. IP99-1123-C-H/G, 2000 WL 1707964, at *2 (N.D. Ill. Aug. 23, 2000) (granting summary judgment on the basis that two physician shareholders in a professional corporation were not to be counted as "employees" for purposes of determining whether the corporation was an employer under the ADEA). The Seventh Circuit precedent controls in this jurisdiction, so unless this case is distinguishable from *Dowd & Dowd*, I must follow it. The issue in *Dowd & Dowd* was the number of employees for jurisdictional purposes, but the same test should be used to determine who is an employee regardless of whether the inquiry is coverage or the right to sue because the ADEA only contains one definition of "employee," and Dr. Schmidt gives no reason why a different test should be used. *Wells v. Clackamas Gastroenterology Assocs., P.C.*, No. CV 99-406-AS, 2000 WL 776416, at *2 (N.D. Ill. May 5, 2000).

In *Dowd & Dowd*, the Seventh Circuit did not adopt a per se rule, but applied the "economic realities" standard, stating that

5

"a person's status as an employer rather than employee must be informed by strong consideration of the economic realities of the employment relationship." 736 F.2d at 1178. I must assess "the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983). In *Armbruster*, the Sixth Circuit provided a non-exhaustive list of factors to consider, including: "hiring and termination processes and history of the manufacturer's representatives as well as evidence as to payment of these individuals, company-paid benefits or advances." 711 F.2d at 1342. This is a factual inquiry. *See id.* The amount of control an employer exercises over the employee's manner and means of work is not determinative, but it is relevant to the "interrelationship" between an employer and an employee. *Ikpoh v. Central Dupage Hosp.*, No. 90 C 7146, 1993 WL 524817, at *19 (N.D. Ill. Dec. 15, 1993).

Dr. Schmidt argues that he is an employee because he has an employment contract with OMC, which repeatedly refers to him as an "employee of the Corporation." However, every physician shareholder of OMC has an employment contract, and each also works for OMC. By definition, only professionals within the relevant profession can be shareholders in a professional corporation. *Dowd*

& *Dowd*, 736 F.2d at 1179. Therefore, each shareholder serves in his or her capacity as an employee physician along with his or her responsibilities as a shareholder of the corporation.

Although Dr. Schmidt has been a shareholder of OMC for more than 30 years and has served as an officer on the Board of Directors, he argues that his capacity with OMC is in reality that of an employee, because he lacks the requisite control over his employment and has only limited personal discretion that the remaining shareholders of the corporation allow him. Dr. Schmidt's employment contract allows the Corporation to determine what positions and offices he will hold, and what patients are assigned to him. Also, OMC's Board of Directors retains the right to relieve him from the treatment of any patient whom it feels will be better treated by another employee of OMC. Even though Dr. Schmidt may not exercise total control over his employment, he does exercise some control. He served as an officer on the Board of Directors for many years. He is given a voice and a vote in all shareholder meetings. Dr. Schmidt claims that from March 1997 through March 13, 2000, the primary control for the operation of OMC was through a Board of Directors of which he was not a member. However, the fact that one or more shareholders or partners might have more influence than others does not support a finding that the others are employees. *See Fountain v. Metcalf, Zima & Co.*, 925 F.2d 1398 at 1401 (11th Cir. 1991).

Finally, Dr. Schmidt argues that he is an employee because he does not share in the profits of OMC. Currently, he is paid only his base salary of $3700 a month, but is eligible for other compensation, as provided by the plan. Dr. Schmidt rejected the current plan, but he nevertheless had the opportunity to participate in the process of revising and voting on the Plan. The non-shareholder physician employees did not have this same opportunity. Further, Dr. Schmidt does not dispute that he does not qualify for any additional compensation because of his lack of generation of professional fees. Dr. Schmidt has the *opportunity* to share in the profits of OMC, a privilege which is limited to shareholders.

Under Seventh Circuit law, the economic reality in this case is that, in his capacity as shareholder, Dr. Schmidt is like a partner in a partnership. Therefore, Dr. Schmidt cannot be viewed as an "employee" under the ADEA. *Dowd & Dowd*, 736 F.2d at 1177-78. Accordingly, I GRANT Ottawa Medical Center's motion for summary judgment.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated: August 3_, 2001